IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| PERFORMANCE CHEVROLET, INC., | ) ) ) | Case No. CV-04-244-S-BLW |
| Plaintiff, | ) ) | **MEMORANDUM DECISION AND ORDER** |
| v. | ) ) | |
| MARKET SCAN INFORMATION SYSTEMS, INC., | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it a motion for summary judgment filed by defendant Market Scan. Oral argument was held on October 31, 2005, and the motion is at issue. For the reasons expressed below, the Court will grant the motion in part as to Counts I, III, and V through VIII, and will deny the motion as to Counts II and IV.

## FACTUAL BACKGROUND

Performance leased software from Market Scan that allegedly never worked as promised. To recover its damages, Performance has sued Market Scan for breach of contract and fraud.

**Memorandum Decision and Order - 1**

The software leased by Performance, a Chevrolet dealer, from Market Scan was known as the Lease Prophet System.  The System allows dealers to search for information from lending institutions as they seek financing for their customers who wish to lease vehicles, thereby allowing the dealers to compare financing packages from the different lending institutions.

Under the written agreements, Performance agreed to a one-time lump sum lease payment, and also agreed to provide lease details to Market Scan.  In exchange, Market Scan would allow Performance to use the Lease Prophet System and provide various services such as maintenance, technical support, installation of hardware and software, and training.

The contracts purport to limit warranties solely to the promise that the system would be in proper working order when installed.  They expressly disclaim all other warranties, including the warranties of merchantability and of fitness for a particular purpose.

Kevin Reinschmidt, Performance's President, signed the contracts after Market Scan made a presentation regarding the Lease Prophet System.  There is dispute regarding what legal effect the presentation had.

Performance alleges that Market Scan promised that the system would (1) give it access to hundreds of lending institutions, (2) update nightly,

**Memorandum Decision and Order - 2**

(3) provide accurate information, and (4) offer the potential for increased revenues and lower costs for Performance in placing customers in lease financing situations. Market Scan argues that, to the extent its employees made such assertions, the assertions were mere "puffery" and that the written contracts superseded them.

Reinschmidt testified that he learned "at the early part to middle of '99'" that the system did not give Performance access to hundreds of lenders, as allegedly promised. *See Attachment A to Motion for Summary Judgment*, Part 4 at 8. His testimony regarding when the other problems with the Lease Prophet System became evident was somewhat in conflict. On the one hand, he testified that the problems began when Performance began using the used car program, which was in March 1999. *Id.* at 5–7, 8–9, 12. Various reports of problems logged with Market Scan's service department in early 1999 support that time frame. *Id.* at 7–12. On the other hand, he testified that from "January to June, we weren't unhappy with the system" and the problems were "garden variety, reasonably acceptable." *Id.* at 4. In any case, it is clear from his testimony that, by the fall of 1999, the system was regularly locking up and not updating. *Id.* at 14–15.

On July 26, 2000, Performance sent Market Scan a letter demanding that Market Scan fix the problems it had been having with the system. The letter explained that Performance had been having "updating problems on and off since

**Memorandum Decision and Order - 3**

the system was installed" and that the problems had "increased greatly in the last quarter." *See Reinschmidt Affidavit*, Part 2 at 8.  The letter explained that Performance had not "had access to accurate information and updates in the leasing program" for the previous two months. *Id.*  The letter attributed the problems to Market Scan's local server. *Id.*  Accordingly, the letter demanded a refund of Performance's payments for the previous two months and a permanent solution to the problem or removal of the system and repayment. *Id.*

Performance stopped making payments to Market Scan over one year later, in September 2001.  It brought suit on April 15, 2004.

This Court denied a motion to dismiss by Market Scan by previous order. Market Scan has now moved for summary judgment on the ground that this action is barred by the statute of limitations, and is, in any event, without merit.  The Court will review each of Market Scan's arguments below.

## ANALYSIS

### 1.    <u>Summary Judgment Standard</u>

Pursuant to Federal Rule of Civil Procedure 56(c), the Court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

**Memorandum Decision and Order - 4**

entitled to a judgment as a matter of law."  The Court must "view the evidence in the light most favorable to the [non-moving party]," and draw "all reasonable inferences in his favor."  *See Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004).

**2.      Applicable Law**

The briefing of the parties contained argument concerning whether Idaho or California law applied to this case.  However, at oral argument, counsel agreed that there was no difference between the law of these jurisdictions for purposes of this case.  Thus, the Court will apply cases or statutes that most precisely fit the facts of this case, without regard to whether they come from Idaho or California.

**3.      Timeliness of Claims – Contract Claims**

Counts I through IV of Performance's complaint are contract claims.  Although governed by different statutes, they all have four-year limitations periods.  *See Idaho Code* § 28-12-506(1), *Cal. Comm. Code* § 10506(a) (governing claims based on the written contract);[1] *see Idaho Code* § 5-217 (governing claims based on the oral contract).  Accordingly, Market Scan must show that no genuine issues of material fact exist to preclude the conclusion that the causes of action

---

[1]  Market Scan's assertion that Idaho Code § 28-2-725 applies fails because that provision applies to sales of goods, not to leases.

**Memorandum Decision and Order - 5**

accrued prior to April 15, 2000.

Market Scan points to the testimony of Kevin Reinschmidt to assert that Performance knew of all the alleged breaches of contract in "early 1999." *See Brief of Market Scan* at p. 6.  The Court agrees with regard to the contract claims that the program would provide access to numerous lenders.  Performance learned by the fall of 1999 that the system would provide access to about five lenders, not to the hundreds of lenders as promised.  *See Attachment A to Defendant's Motion for Summary Judgment*, Part 4 at 8, 14–15.  Summary judgment on this particular claim is therefore appropriate.

It is not so clear, however, when the remainder of the contract claims accrued.  Those claims concern Market Scan's continuing promises to provide services such as training and maintenance.  By their terms, these promises contained obligations that would arise after the software was installed and that would continue throughout the life of the lease agreements.  The record is not entirely clear when Market Scan breached these promises, and so summary judgment on limitations grounds cannot be granted at this time.

### 4.   <u>Timeliness of Claims – Tort Claims</u>

Counts V through VIII in the plaintiff's complaint are tort claims.  At oral argument, Performance's counsel agreed to dismiss Counts V (breach of fiduciary

duty) and VIII (negligence).  The remaining tort claims are Counts VI (violation of Idaho Deceptive Business Practices Act) and Count VII (fraud).

In order to determine their timeliness, the court must first determine the rules governing accrual.  Typically, these claims accrue when the plaintiff discovers the facts constituting the fraud.  *See Idaho Code* §  5-218(4).  As interpreted by case law, that means that the claims accrued when Performance  "knew or, with the exercise of reasonable diligence, should have been able to know, a cause of action for fraud might exist."  *Nerco Minerals Co. v. Morrison Knudsen Corp.*, 90 P.3d 894, 901 (Idaho 2004).  Although "the date of discovery is [generally] a fact question for the jury," summary judgment is appropriate when no genuine issue of material fact exists regarding that date.  *Id.* at 900.

The accrual date may be extended if there are continuing violations. In *Curtis v. Firth*, 850 P.2d 749, 754 (Idaho 1993), the Idaho Supreme Court held that for limitations purposes, continuing violations involve "a continuous chain of tortious activity" in which no single incident "can fairly or realistically be identified as the cause of significant harm," and distinguished such violations from more traditional torts in which a single incident may cause continuing harm.

Count VI, a claim under the Idaho Fraud and Deceptive Business Practices Act, has a two-year limitations period.  *See Idaho Code* § 48-619.  Performance's

**Memorandum Decision and Order - 7**

complaint alleges that Market Scan promised that its system would allow
Performance to access hundreds of lending institutions even though Market Scan
knew, at the time it made that promise, that the promise was false.

As discussed above, Performance learned by the fall of 1999 that the system
would provide access to about five lenders, not to the hundreds of lenders as
promised. *See Attachment A to Defendant's Motion for Summary Judgment*, Part 4
at 8, 14–15. Performance does not allege that Market Scan made any assurances
regarding the access to lenders that might have delayed Performance's realization
that Market Scan had lied.

Accordingly, it is clear that Performance "knew or, with the exercise of
reasonable diligence, should have been able to know," that a cause of action under
the Act might exist by the fall of 1999. *Nerco*, 90 P.3d at 901. Performance
therefore had to file suit by the fall of 2001 to comply with the limitations period.
*See Idaho Code* § 48-619. However, Performance did not file this suit until April
15, 2004. Thus, Count VI is time-barred.

Count VII, a claim for fraud, is governed by Idaho Code § 5-218(4), which
provides a three-year statute of limitations. That count alleges that Market Scan
defrauded Performance by falsely promising (1) that the system could be updated
daily, (2) that the system would provide access to hundreds of lending institutions,

**Memorandum Decision and Order - 8**

and (3) that Performance's employees would be trained and able to operate the system "to bring increased profits" to Performance.

The complaint alleges that these promises were made "on or about September 24, 1998," for the purpose of inducing Performance to enter into the lease. *See Complaint* at p. 14, ¶ 74.  There are no allegations of any continuing fraud occurring after the lease was signed.

At oral argument on the motion for summary judgment, Performance's counsel pointed to evidence in the record that she alleged constituted a pattern of continuing fraud, occurring after the lease was signed, that misled Performance into delaying filing this suit.  However, this argument goes outside the allegations of Count VII.  Because the time for amending the pleadings has long-since passed, Performance's fraud claim is defined by the narrow claim in Count VII that Market Scan made three representations on or about September 24, 1998, that it knew to be false for the purpose of persuading Performance to sign the lease.

By the fall of 2000, Performance had discovered the facts constituting this fraud.  The Lease Prophet System was not updating, was not providing access to numerous lenders, and was not resulting in any increased profits to Performance.  Any fraud was therefore readily apparent by the fall of 2000, giving Performance a full three years from that time to file suit.  It failed to file suit until April of 2004,

**Memorandum Decision and Order - 9**

and thus Count VII is time-barred.

In conclusion, with regard to the tort claims the Court grants summary judgment to Market Scan on Counts V, VI, VII, and VIII.

**5.      Substantive Grounds – Contract Claims**

Market Scan argues that the Court should grant summary judgment on all of Performance's contract claims on substantive grounds.  Because there are conflicts between the express wording of the contracts and certain extra-contractual words and deeds, the Court will begin by examining the law applicable to these issues.

Both California and Idaho law provide that, when words or conduct creating an express warranty conflict with words or conduct limiting the warranty, the limitation "is inoperative."  *See Cal. Comm. Code* § 2316(1); *Idaho Code* § 28-12-214.  However, both statutes specifically explain that this statement is "subject to the provisions of [the section on] parol or extrinsic evidence."  *Id.*

The parol evidence rule makes it clear that, when a written agreement by contracting parties specifies a term, evidence "of any prior agreement or of a contemporaneous oral agreement" may not be introduced to contradict the term. *See Cal. Comm. Code* § 2202; *Idaho Code* § 28-2-202.  Certain kinds of evidence that explain or supplement the term may be introduced.  *Id.* at (a).  In addition, unless the contract is fully integrated, evidence of consistent additional terms may

be introduced.  *Id.* at (b).

Accordingly, the parol evidence rule holds that the most recent, written agreement trumps past written agreements and contemporaneous oral ones to the extent they are inconsistent.  *See Cal. Comm. Code* § 2202; *Idaho Code* § 28-2-202.  When integrated with the rule regarding limitations of warranties, then, it is clear that when parol evidence suggests that a warranty exists but that evidence conflicts with a written provision limiting the warranty, the written provision takes precedence.  That is true regardless of whether the written provision is part of a fully integrated contract.[2]  As long as it is a "[t]erm[] with respect to which the confirmatory memoranda of the parties agree," the statute bars the introduction of conflicting parol evidence. *See Cal. Comm. Code* § 2316(1); *Idaho Code* § 28-12-214.

California and Idaho law also provide specific requirements for modifying or excluding the implied warranties of merchantability and fitness.  *Cal. Comm. Code* § 2316(2); *Idaho Code* § 28-12-14(2).  Any modification or exclusion of

---

[2]  The statute specifies that the provision applies to "[t]erms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein."  *Id.*  Only subsection (b) applies to terms in fully integrated contracts.  That section bars evidence even of "consistent additional terms" if the court concludes that the parties intended the writing "also as a complete and exclusive statement of the terms of the agreement." *Id.* at (b).

**Memorandum Decision and Order - 11**

those warranties must mention the warranties by name, "be by a writing, and be conspicuous." *Id.*

In light of all the above, the Court will examine the parties' contracts with the following general rules derived from California and Idaho law in mind:  (1) When written warranties and warranty limitations conflict, warranties trump limitations; (2) When written terms conflict with parol evidence, written terms take precedence; (3) When a contract is fully integrated, parol evidence may not be introduced to add even consistent terms.

### A.    Contract provisions

The contracts contain promises regarding services, the software program itself, and other promises that are hard to categorize.  The Court will address the three aspects of the contracts separately.

### i.    Services

The contracts contain several provisions that pertain to services.  Paragraph 2 provides that customers shall have daily access to Market Scan's database and that Market scan will provide online technical support and software maintenance. 1998 and 1999 Contracts at pp. 3, 6 ¶ 2.  Paragraph 3 provides that Market Scan will provide training to Performance Chevrolet's employees.  *Id.*  These promises of services are clear and unambiguous.

**Memorandum Decision and Order - 12**

In addition, the contracts contain a warranty section that reads in pertinent part as follows:

> (a)  MSIS warrants that the licensed programs, at the time installed, will be in proper working order.  THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES AND THERE ARE NO OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.
> . . .
>
> (c) MSIS has made every effort to ensure the accuracy of data in the Lease Prophet II database.  However MSIS assumes no responsibility for any errors or omissions.  Customer hereby agrees that all information required for the preparation of vehicle lease agreements will be manually verified . . . .

1998 and 1999 Contracts at 3 and 6 ¶ 8.  Thus, the warranty section provides a limited warranty with respect to the software program and expressly disclaims reliance on the information's accuracy for actual lease contracts.  The Court addresses that warranty below, when it examines the contract's promises regarding the software program.  Relevant to the discussion of the services part of the contract, with which the Court is dealing now, is the contract's disclaimer of all other warranties.

The general, written disclaimer of all other warranties conflicts with the specific, written provisions of the contract governing the services Market Scan agreed to provide.  As discussed above, when two written provisions conflict, an

**Memorandum Decision and Order - 13**

affirmative warranty trumps a limitation.  Accordingly, the warranty disclaimer is

inoperative as to the services for which the contract expressly provides.  Under the

contract, Market Scan agreed to provide daily access to its database, on line

technical support, and training.

### ii.     Software

The contracts provide that Market Scan will "install computer hardware and

license the software programs" named in the contract.  *See* 1998 and 1999

Contracts at 2 and 5.  They also provide that Market Scan will maintain the

software so long as the maintenance or repair is not "necessitated by negligence,

abuse or excessive wear and tear."  *Id.* at 3 and 6 ¶ 2.  However, the warranty

section disclaims all warranties as to the software, including the warranties of

fitness and merchantability, except for the promise that "at the time [the software

is] installed, [it] will be in working order."  *Id.* at ¶ 8.  It also disclaims reliance on

the accuracy of information in the database.  *Id.*

The promise to provide maintenance for the software appears to be in some

conflict with the time element of the warranty limitation.  Specifically, the

limitation that the software is only guaranteed to be in working order at the time

installed conflicts with the promise that Market Scan will perform maintenance on

the software throughout the contract, so long as Performance's negligence or abuse

**Memorandum Decision and Order - 14**

do not necessitate the maintenance.  A promise to maintain a system amounts to a promise that the system will be kept in working order – otherwise, maintenance would be unnecessary.  Accordingly, the limitation provided by the warranty that the software is only guaranteed to be in working order *at the time of its installation* is inoperative.

The limitation of the warranties of merchantability and fitness for a particular purpose, however, do not conflict directly with any express terms of the contract.  Accordingly, those limitations are operative, and any claim based on an implied warranty of merchantability and fitness for a particular purpose must be dismissed.  Similarly, because the disclaimer regarding reliance on the information in the database for lease contracts does not conflict with other language in the contract, it, too, is operative.

In addition to the written promises in the contract, Performance asserts that Market Scan orally, and by use of an example, promised that the software would give Performance access to hundreds of lenders, instead of the five to which Performance actually had access.  Because this alleged oral promise contradicts the written provision on warranties, the Court concludes that evidence regarding it is

inadmissible.[3]

### iii.     Provisions not clearly service or software oriented

The contracts contain at least one provision that is hard to categorize:

Performance's agreement to be a "Beta Site designee."  *See* 1998 and 1999

Contracts at 3 and 6 ¶ 5.  The contracts incorporate a document in which

Performance agreed to this designation.  *Id.*  The contracts make clear what is

required of Performance:  By becoming a Beta Site designee, Performance  agreed

to report its lease information, which Market Scan apparently used to create some

sort of database.  *Id.*

The Beta Site Designation agreement states that Market Scan will provide

"an Individual PIN [Personal Identification Number] number and a unique data

base" to Performance.  The Designation represents that the "unique data base" will

give dealers "[i]nstant recognition of any/every minute change in regional

programs" which "makes an enormous contribution to the ability of the MSIS team

of dealers to achieve significantly higher lease penetration, a meaningful boost in

their CSI rating plus an unparalleled competitive edge in every market situation."

*See Reinschmidt Affidavit* at Exhibit H.

---

[3]  The Court also notes that, because the promise of access to lenders is not an additional term that is *consistent* with the contract, the Court need not determine if the contract is fully integrated.  *See* CAL. COMM. CODE § 2202; IDAHO CODE § 28-2-202.

Accordingly, the Court deems the Beta Site Designation agreement as warranting that Performance will receive a PIN, and access to a "unique database" that includes "instant recognition of any/every minute change in regional programs." *Id.* To the extent the limitations on warranties conflict with these warranties, they are inoperative.

### 2. <u>Performance's contract claims</u>

In light of the foregoing, the Court will examine Performance's contract claims. The Court will not address claims of which it has already disposed on statute of limitations grounds.

Count I, seeking a revocation of the contracts and a refund of payments, duplicates the other contract claims. Accordingly, the Court grants summary judgment as to that claim. *See Fed.R.Civ.P.* 12(f).

Count II, for breach of written contract, asserts the following four breaches:

1. Market Scan breached the service aspect of the contract by failing to deliver promised services, resources, expertise, and experience.

2. Market Scan breached the software part of the contract by failing to insure that its software was in proper working order.

3. Market Scan breached its promise that its program would achieve greater profits and other goals for Performance.

Memorandum Decision and Order - 17

     4.     Market Scan breached its oral promise that the program would provide access to many lenders.

The first two asserted breaches survive summary judgment.  Market Scan contractually promised to provide services, and its attempts to limit the warranty regarding those services fail, as discussed above.  Similarly, Market Scan promised to maintain the system throughout the contract, so assertions that the system was not in proper working order assert a violation of that promise.

The third and fourth asserted breaches do not survive.  The contracts do not promise that the system will generate greater profits or provide access to a certain number of lenders.  Moreover, they disclaim all warranties besides those expressly promised.  Accordingly, parol evidence contradicting the written contract and asserting that affirmative warranties exist is inadmissible.  Thus, the Court grants summary judgment to Market Scan regarding the third and fourth asserted breaches of Count II.

Count III asserts breach of an oral contract formed during negotiations between the parties.  Because the written contracts expressly provide that they "supersede[] and take[] precedence over any and all previous agreements," summary judgment is warranted as to this claim.  Accordingly, the Court grants summary judgment as to Count III.

**Memorandum Decision and Order - 18**

Count IV, for breach of warranties, asserts five breaches:

1.     Market Scan breached its promise that its program would achieve greater profits and other goals for Performance Chevrolet;

2.     Market Scan breached its promise to provide accurate data, a "unique data base" under the Beta Designation, and daily updates to Performance Chevrolet;

3.     Market Scan breached the implied warranties of merchantability and fitness for a particular purpose;

4.     Market Scan breached its promise to provide a system that was in proper working order.

5.     Market Scan breached its promise to provide access to many lenders.

*See Complaint* at pp. 13-14.  Because the first, fourth, and fifth assertions have already been addressed, the Court will not address them again.

As to the second assertion, the Court grants summary judgment regarding the breach of any promise to provide accurate data.  No such promise on Market Scan's part exists in the contracts.  Indeed, the contracts specifically state that the data should not be relied upon for actual leases unless first checked.  *See* 1998 and 1999 Contracts at pp. 2, 6 ¶ 8(c).

However, the Court denies summary judgment regarding the breach of the

**Memorandum Decision and Order - 19**

promise to provide daily updates, and a "unique data base" in the Beta

Designation.  The contracts promise daily access in Paragraph 2.  As discussed

above, that express promise, and the express promise regarding the Beta

Designation, trumps the limitation on warranties.

As to the third assertion, as discussed above, the contracts expressly disclaim

the warranties of merchantability and fitness.  Moreover, they satisfy the

requirements of both California and Idaho law in their disclaimer.  Accordingly,

the Court shall grant summary judgment as to the third assertion.

**6.**     **Substantive Grounds – Tort Claims**

The Court finds no need to analyze the substantive grounds of dismissed

Counts V, VI, and VIII.  Counts V and VIII were dismissed by agreement of the

parties, and Count VI is clearly time-barred as discussed above.  Count VII is also

time-barred, as discussed above, but the Court will go on to address its merits

because this provides an additional reason for dismissal of this claim.

Count VII alleges that on or about September 24, 1998, Market Scan

knowingly made misrepresentations that the System could be updated nightly,

would give access to numerous lenders, and would produce extra profits.  Market

Scan responds that these promises were mere sales talk or "puffery," and did not

constitute knowing fraud.

In response, Performance cites *G&M Farms v. Funk Irrigation Co.*, 808 P.2d 851, 859 (Idaho 1991) for the proposition that false promises regarding future actions may generate fraud claims if sufficiently definite.  While that is true, *G&M Farms* also establishes that one of the elements Performance must prove is Market Scan's knowledge of the falsity of its statements at the time they were made by clear and convincing evidence.  *G&M*, 808 P.2d at 855.

Performance has not pointed, however, to anything in the record that suggests that Market Scan knew of the alleged falsity of its promises when it made them on September 24, 1998.  That would require some proof that Market Scan entered into the lease negotiations in 1998 knowing that its Lease Prophet System could not perform, and Performance has not identified any such evidence that might satisfy the clear and convincing standard.  Accordingly, the Court shall grant summary judgment on the merits of Count VII in addition to finding that the claim is time-barred.

## 7.   Conclusion

Based on the discussion above, the Court will grant Market Scan's motion for summary judgment in part, dismissing all the tort claims and a portion of the contract claims.  What remains are contract claims that the Lease Prophet System did not work as promised, and that Market Scan failed to fix the problems.

**Memorandum Decision and Order - 21**

# ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that Market Scan's motion for summary judgment (Docket No. 73) is GRANTED IN PART AND DENIED IN PART.  It is granted to the extent it seeks summary judgment as to (1) Count I, (2) the claim in Count II that the lack of access to numerous lenders constituted a breach of contract, (3) Count III, (4) the claim in Count IV that the lack of access to numerous lenders constituted a breach of warranty, (5) Count V, (6) Count VI, (7) Count VII, and (8) Count VIII.  IT IS DENIED to the extent it seeks summary judgment on the remaining breach of contract/warranty claims contained in Counts II and IV.



DATED:  **November 18, 2005**

B. LYNN WINMILL
Chief Judge
United States District Court