IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| PERFORMANCE CHEVROLET, INC., | ) ) ) | Case No. CV-04-244-S-BLW |
| Plaintiff, | ) ) | **MEMORANDUM DECISION** |
| v. | ) ) ) | |
| MARKET SCAN INFORMATION SYSTEMS, INC., | ) ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it a number of post-trial motions. The motions are fully briefed and at issue. For the reasons expressed below, the Court will deny Market Scan's motion for judgment as a matter of law or for new trial, and shall grant Performance's motion for fees and costs.

## LITIGATION BACKGROUND

Performance leased software from Market Scan that failed to work as promised. To recover its damages, Performance sued Market Scan for breach of contract, negligence, breach of fiduciary duty, and fraud, among other claims.

Market Scan's software was designed to allow car dealers to search for

information from lending institutions as they seek financing for their customers who wish to lease vehicles, thereby allowing the dealers to compare financing packages from the different lending institutions.  Performance leased the software from Market Scan, signing the first lease agreement on October 27, 1998, and the second on June 1, 1999.

These agreements stated that Market Scan's software would provide "daily updates" and would be in "proper working order."  In addition, Market Scan agreed to "provide software maintenance."  After the software was installed, however, it frequently failed to provide the daily updates of financing information, among other problems.  Performance worked closely with Market Scan's technical team to correct the defects but without success.  In this action, Performance sought to recover damages under both fraud and breach of contract/warranty theories.

In a pre-trial decision, the Court granted a partial summary judgment, dismissing all claims except for the breach of contract/warranty claims.  Following five days of trial, the Court submitted the remaining issues to the jury.

The jury returned a verdict that (1) Market Scan breached the contract; (2) that the second contract superseded the first; (3) that Performance waived any claims it had for breach of the first contract; (4) that between June 1, 1999 (the date the second contract was signed) and April 15, 2000 (a date 4 years from the date

**Memorandum Decision – Page 2**

the suit was filed on April 15, 2004), Performance suffered damages of

$18,852.63; and (5) that between April 15, 2000, and June 1, 2002 (the end of the

second contract), Performance suffered damages of $47,163.35.

The parties have filed various post-trial motions that the Court will consider,

beginning with Market Scan's motion for judgment as a matter of law or for new

trial.

## ANALYSIS

## 1.    Standard of Review

Market Scan seeks a judgment as a matter of law under Rule 50(b).  To

prevail, Market Scan must show "that the evidence, construed in the light most

favorable to [Performance Chevrolet], permits only one reasonable conclusion, and

that conclusion is contrary to that of the jury." *Forrett v. Richardson*, 112 F.3d

416, 419 (9th Cir.1997).  Judgment as a matter of law may not be used simply

because of disagreement with a jury's verdict.  *Id.*  The standard for granting

judgment as a matter of law is the same as that for granting summary judgment.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a plaintiff succeeds in

raising a genuine factual issue regarding [its claims], . . . it is for the trier of fact to

decide which story is to be believed." *Washington v. Garrett*, 10 F.3d 1421, 1433

(9th Cir.1993).

The general grounds for a new trial are, among others, that "the verdict is

against the clear weight of the evidence . . . that the trial was not fair, or that

substantial errors occurred in the admission or rejection of evidence . . . ."  12

Moore's *Federal Practice-Civil* §59.13 (2004).

## 2.      Statute of Limitations

Both sides agree that Performance's breach of warranty claim is governed by

a 4-year statute of limitations that runs from the date "on which the default or

breach of warranty is or should have been discovered by the aggrieved party, or

when the default occurs, whichever is later."  *See* California Commercial Code

(CCC) § 10506(a); Idaho Code § 28-12-506.  Market Scan is raising the statute of

limitations as an affirmative defense and hence has the burden of proving that the

action is time-barred.  *See California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402,

1406 (9th Cir. 1995).[1]

Market Scan points to the testimony of Performance's owner, K.R.

Reinschmidt, that Market Scan's software "never worked" and failed to update

70% of the time during the entire lease period, including the year 1999.  This was

---

[1] Generally, it is an issue for the jury to determine when a reasonable person should have discovered certain facts for statute of limitations purposes. *Nevada Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1307 (9th Cir. 1992).  However, given that neither party argued (either at trial or now) that the jury should decide this specific issue, the Court will make the decision. *Snake River Valley Elec. Ass'n v. PacifiCorp*, 357 F.3d 1042 (9th Cir. 2004).

**Memorandum Decision – Page 4**

well over 4 years before Performance filed suit on April 15, 2004, and hence this suit is time-barred, Market Scan contends.

Performance responds that Market Scan's repair attempts tolled the limitations period.  The California Supreme Court, after reviewing California law, stated that "the statute of limitations for breach of warranty does not begin to run until discovery of the defect, and is thereafter tolled during periods the warrantor claims he can honor the warranty by repairing the defect, and attempts to do so." *Lantzy v. Centex Homes*, 73 P.3d 517, 524 (2003).

Market Scan responds that while the statute governing sales contracts (§ 2-725) specifically allows tolling for repair efforts, no such language is found in the statute governing lease contracts (§ 10506), evincing a legislative intent to treat leases more restrictively than sales contracts.  However, this argument ignores the comments to § 10506, which state that it is "a more liberal rule" for limitations purposes than § 2-725.  Indeed, the language of the provisions confirms that interpretation.  While § 2-275 contains a narrow discovery *exception,* § 10506 contains a broad discovery *rule* that sweeps within its terms the narrow discovery exception of § 2-725.

Section 2-725 provides generally that a cause of action for breach of warranty on a sales contract accrues when tender of delivery is made, "except

**Memorandum Decision – Page 5**

where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered." This is a narrow discovery exception to the statute's general rule that accrual does not await discovery. It recognizes the principle that when a warrantor is obligated to repair defects, the full extent of the defect may not be discoverable until the repair efforts have proven futile.

This principle is nowhere repudiated in § 10506 – a statute deemed "a more liberal rule" than § 2-725. Section 10506, quoted above, makes discovery the rule – not the exception – for triggering the limitations period. The wording of that rule is clearly broad enough to include cases where discovery of the breach must await the outcome of repair efforts. In other words, the discovery exception set forth in § 2-725 is merely a subset of the discovery rule stated in § 10506.

Market Scan cites in support *Mills v. Forestex Company*, 134 Cal. Rptr. 2d 273 (Ct.App. 2003). This case did not hold that – or even discuss whether – the discovery rule of § 10506 includes cases where discovery must await repair efforts. *Mills* is a suit over defective siding. The plaintiffs had first noted that their siding was buckling in the winter of 1992-93. *Id*. at 292. Under Market Scan's theory, this is when the limitations period should have started. But the court did not so

**Memorandum Decision – Page 6**

hold.  Instead, the court chose the "summer of 1993" to begin the running of the

limitations period.  *Id*. at 294.  Earlier in the opinion, the court had noted that it

was during the summer of 1993 that the applicator had "tried without success to

correct the problem."  *Id*. at 293.  Thus, it appears that the court started the

limitations period running only after a repair effort proved futile, although that is

not entirely clear because the court made no express finding on the issue.  At any

rate, *Mills* does not compel any interpretation of § 10506 different from what the

Court has concluded above.

Section 10506 begins the 4-year limitations period on the later of (1) the date

of actual discovery of the breach, or (2) the date a reasonable person should have

discovered the breach.  Discovery of the breach may need to await the outcome of

required repairs.

In this case, Market Scan expressly warranted that (1) the software "will be

in proper working order," and (2) that it would "provide software maintenance."

*See June 1, 1999, Lease Agreement* at ¶¶ 2, 8.  The evidence showed that while the

software had problems from the very beginning, major problems did not begin

until about April of 1999.  Market Scan repeatedly attempted to repair the

software, often achieving short-term success only to see the program fail again.

The problems were complex without any easily ascertainable cause.  By July 26,

**Memorandum Decision – Page 7**

2000, Performance notified Market Scan in a strongly-worded letter that its problems had "increased greatly in the last quarter," and demanded that Market Scan "fix the problem once and for all" or "remove the system."

Prior to this letter of July 26, 2000, Market Scan had attempted numerous repairs and Performance reasonably believed that those repairs might be successful. It was not until July 26, 2000, at the earliest, that a reasonable person in Performance's situation might have believed that further repair efforts would be futile. There is no evidence that Performance actually discovered the breach any earlier than July 26, 2000. Thus, the Court holds that both actual and constructive discovery occurred, at the earliest, on July 26, 2000, and hence this suit – filed April 15, 2004 – was timely filed.

## 3.    Sufficiency of Evidence on Breach of Contract

Market Scan asserts that Performance failed to establish that its damages were caused by defective software. California law holds that Performance must show that its damages were "proximately caused" by defects in the software.[2] Market Scan asserts there was no evidence – expert or otherwise – from which the jury could conclude that the problems encountered by Performance were due to

---

[2] California Civil Code § 3300 provides: "For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."

**Memorandum Decision – Page 8**

defects in the software rather than fault on the part of Performance.

Market Scan's argument strikes at the intersection of liability and remedy. Damages is an element of liability. *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.,* 11 Cal.Rptr. 3d 412, 424, n. 6 (Cal.App.Ct. 2004) (holding that the existence of damages is a required element of a breach of contract claim). By arguing that Performance has failed to show that its damages were proximately caused by the software, Market Scan is essentially arguing that Performance has failed to prove liability and is not entitled to any remedy.

The Court disagrees. When Performance complained about the software, Market Scan suspected that the problems were on Performance's end, and accordingly advised Performance to test its phone lines and try different internet providers. Performance followed this advice without success, which is some evidence that the problem lay in the software rather than with Performance. Other dealers testified that with different phone lines and internet providers they still encountered the same problems experienced by Performance. Moreover, there was testimony that the program would often freeze-up only near the end of the program when Market Scan was taking information from Performance. While Performance called no experts to establish either a breach or damages, Performance was only seeking to recover the lease payments it had made to Market Scan, not lost profits.

**Memorandum Decision – Page 9**

Examining all of this together, a reasonable juror could conclude that Performance carried its burden of showing that the problems it encountered were due to defects in Market Scan's software, that these defects rendered the software worthless to Performance, and that the defects were the proximate cause of Performance's damages, *i.e*, the lease payments it made to Market Scan for worthless software.

**4.      Other Dealers' Testimony**

Market Scan renews its objection to the testimony of other dealers regarding the problems they had with the software.  The Court is unpersuaded that its prior ruling was incorrect.  The Court held a hearing to ensure that there was a tight fit between the experience of the other dealers and that of Performance, and issued a limiting instruction to the jury.  The Court therefore rejects this argument for a new trial.

**5.      Testimony of Kevin Hanigan**

Market Scan renews its objection to the testimony of Kevin Hanigan, claiming that he was not timely disclosed as a witness.  The Court ruled on this argument at trial after hearing arguments of counsel, and allowed the witness to testify.  The Court issued an instruction to the jury explaining the Court's ruling, and can find no reason to change that ruling now or grant a new trial.

**6.      Other Evidentiary & Jury Instruction Issues**

**Memorandum Decision – Page 10**

The Court has reviewed Market Scan's challenges to other decisions regarding evidence and jury instructions.  The Court can find no reason to reconsider its decisions made at trial on these issues.

## OTHER MOTIONS

**1.      Performance's Motion for Directed Verdict**

Performance seeks a directed verdict on Market Scan's affirmative defenses of the statute of limitations and waiver.  The statute of limitations issue has been mooted by the discussion above. With regard to waiver, the jury found that Performance had waived any damages for the first contract by signing the second contract. There is substantial evidence to support that verdict, and the Court will not disturb it.

**2.      Market Scan's Motion to Strike Directed Verdict Motion**

Given the decision above, this motion is moot.

**3.      Performance's Amended Petition for Fees and Costs**

Performance seeks $11,397.03 in costs and $175,649.80 in fees. Performance is entitled to fees under its lease agreement if it is the prevailing party.  *See 1999 Lease Agreement* at ¶ 10(I).  Performance contends that it prevailed in this litigation and hence is entitled to fees under this provision of the Agreement.  Market Scan counters that it was the prevailing party (or that the

result was mixed) because most of Performance's claims were dismissed prior to trial.

The Court finds that Performance prevailed.  From the beginning, Performance's key allegation, contained in each cause of action, was that Market Scan provided defective software  and that Performance should recover its lease payments.  The jury agreed.  While most of Performance's claims were dismissed prior to trial, those claims were largely alternative methods of pleading and proving the same allegation: That the software was defective and that the lease payments should be returned.  Hence, Performance is the prevailing party.  *See Cal. Civ.Code* § 1717(a) (providing that when a contract entitles the "prevailing party" to attorneys' fees and costs, the "prevailing party" in the contract action is the party prevailing "on the contract ").

The Court has examined the fee request and finds that both the hourly rate and the total amount of hours are reasonable.  The Court will therefore award $175,649.80 in fees to Performance.

Performance also seeks pre-judgment interest.  Such an award is barred by the lease agreement.  *See 1999 Lease Agreement* at ¶ 8(c).

With regard to costs, the Clerk taxed costs of $7,533.12 against Market Scan.  That decision is proper and the Court shall affirm it.

**Memorandum Decision – Page 12**

**4.**      **Conclusion**

For the reasons expressed above, the Court shall deny Market Scan's motion

for judgment as a matter of law or, in the alternative for a new trial, and shall grant

Performance's motion for fees and costs.  Pursuant to Rule 58, the Court enter a a

separate Judgment.



DATED:  **March 28, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge